IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

H&R BLOCK ENTERPRISES LLC,

          Plaintiff,

v.

WALTER A. ASCHER,

          Defendant.

Case No.: 4:15-cv-00178-SRB

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR DEFAULT JUDGMENT

This matter is before the Court on the Motion for Default Judgment ("the Motion") of Plaintiff H&R Block Enterprises LLC ("Plaintiff" or "H&R Block"), filed August 19, 2015. Having considered the Motion, the evidence presented through the affidavits submitted with the Motion, and the additional submissions, arguments and evidence submitted by all parties in this action, the Court finds that Plaintiff has demonstrated its entitlement to default judgment. Plaintiff's Motion is therefore GRANTED.

I.     **PROCEDURAL HISTORY**

On March 12, 2015, Plaintiff filed its Verified Complaint in this case, alleging that Defendant Walter A. Ascher ("Defendant" or "Ascher") breached the Asset Purchase Agreement ("APA") and Noncompetition and Nonsolicitation Agreement ("Noncompetition Agreement") (collectively, the "Agreements") in place between the parties. Plaintiff filed a Motion for Preliminary Injunction contemporaneously with the Verified Complaint, and timely served process on Defendant by hand-delivery at his place of business. Defendant thereafter sent an

email to the Court expressing opposition to the Motion for Preliminary Injunction, but has not filed a response to the Verified Complaint or otherwise appeared and participated in this action.

On April 3, 2015, the Court heard and granted Plaintiff's Motion for Preliminary Injunction over Defendant's emailed objection. *See* April 3, 2015 Order of Preliminary Injunction ("Preliminary Injunction") (ECF No. 010). Defendant did not appear at the hearing, despite his notice of the proceeding and the Court's efforts to reach him and to invite his participation in the hearing by telephone.

On May 22, 2015, the Court granted Plaintiff's Motion for Contempt against Defendant, finding that evidence submitted by Plaintiff clearly established that Defendant had violated and was continuing to violate material terms of the Court's April 3, 2015 Preliminary Injunction. *See* May 22, 2015 Order Holding Defendant in Contempt of Preliminary Injunction at 1 ("Contempt Order") (ECF No. 023). The Court thus held Defendant in contempt and ordered him, *inter alia*, to (a) within 10 days of entry of the Contempt Order, pay Plaintiff $10,000 to reimburse fees and costs incurred by Plaintiff in connection with its enforcement of the Preliminary Injunction, (b) within 10 days of entry of the Contempt Order, file a sworn, notarized affidavit with the Court affirming he is fully complying and will continue to comply with the Preliminary Injunction, and (c) pay Plaintiff $1,000 per day for any and all continued violation of the Court's Preliminary Injunction. *Id.* at 2. To date, Plaintiff has not received the payments ordered, nor have Plaintiff or the Court received an affidavit from Defendant affirming compliance with the Preliminary Injunction. Instead, Plaintiff has tendered evidence that Defendant has continued to violate the Preliminary Injunction.

2

Case 4:15-cv-00178-SRB   Document 32   Filed 08/20/15   Page 2 of 14

On July 15, 2015, the Clerk of Court entered default against Defendant. (ECF No. 027). Plaintiff now moves the Court to enter judgment against Defendant on Plaintiff's claims. For the reasons discussed herein, that Motion is GRANTED.

## II. JURISDICTION AND CHOICE OF LAW

The Court adopts and incorporates herein the findings and reasoning detailed in its April 3, 2015 Preliminary Injunction regarding jurisdiction and choice of law. (ECF No. 010 at 1-2). Specifically, the Court finds that Defendant has both stipulated and consented to personal jurisdiction in this Court and to Missouri law as the choice of law. Defendant has additionally appeared in this action by email to the Court and has never objected to this Court's jurisdiction.

## III. PLAINTIFF HAS DEMONSTRATED ITS ENTITLEMENT TO A DEFAULT JUDGMENT

Where, as here, the Clerk of Court has entered a default, the entry of default judgment is committed to the sound discretion of the Court. *Fingerhut Corp. v. Ackra Direct Marketing Corp.*, 86 F.3d 852, 856 (8th Cir. 1996). Among other circumstances, this Circuit has recognized that entry of a default judgment for failure to defend is appropriate when a party's conduct includes "willful violations of court rules, contumacious conduct, or intentional delays." *Id.* (quoting *United States v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993); *cf. also Monsanto Co. v. Ralph*, 382 F.3d 1374, 1381 (Fed. Cir. (Mo.) 2004) (affirming striking of defendant's pleadings and entry of judgment for plaintiff: "As the Eighth Circuit explained in *Denton v. Mr. Swiss of Missouri, Inc.*, 564 F.2d 236 (8th Cir. 1977), '[t]he judicial system cannot tolerate litigants who flagrantly refuse to comply with the orders of the court . . ., for delay and evasion are added burdens on litigation, causing waste of judicial and legal time, are unfair to the litigants and offend the administration of justice."). In addition, where a "defendant has filed no response or taken any other action indicating an intent to respond," the defendant is considered a "totally

unresponsive party," and "default judgment against the defendant is appropriate" under Fed. R. Civ. P. 55(b). *United States v. Gant*, 268 F. Supp. 2d 29, 32-33 (D.D.C. 2003).

Moreover, a defaulting party is deemed to have admitted all well-pleaded factual allegations in the complaint that do not relate to the amount of damages. *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). As the Eighth Circuit has explained, "[i]f the court determines that the defendant is in default, his liability to the plaintiff is deemed established and the plaintiff is not required to establish his right to recover. The allegations of the complaint except as to the amount of damages are taken as true. If the default is established, the defendant has no further standing to contest the merits of plaintiff's right to recover." *Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973) (quoting 3 Barron & Holtzoff, Federal Practice & Procedure § 1216, pp. 85-86 (1958)).

Because Defendant is in default in this case, Plaintiff's well-pleaded factual allegations are deemed admitted and Defendant's liability to Plaintiff is established. *See id.* Further, Plaintiff has submitted compelling evidence that Defendant has violated—and, despite the April 3, 2015 Preliminary Injunction and May 22, 2015 Contempt Order, is actively continuing to violate—the reasonable, enforceable terms of the parties' Agreements. The Court hereby adopts and incorporates the findings outlined in its May 22, 2015 Contempt Order, including without limitation its finding that "[t]he evidence presented to the Court clearly establishes that Defendant Walter Ascher has violated material terms of the Court's April 3, 2015 Order of Preliminary Injunction." (ECF No. 023 at 1).

The Court further finds that Defendant has failed to engage in this proceeding for several months—having failed to respond to Plaintiff's Verified Complaint or participate in the hearings in this action—and has "flagrantly refuse[d] to comply" with the Preliminary Injunction and Contempt Order issued by this Court. *See Monsanto Co.*, 382 F.3d at 1381. Defendant has offered no explanation for his failure to participate in this action or to comply with the Court's orders. As such, both the law and the record of this case support entry of judgment against Defendant on Plaintiff's claims.

V. **PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF, COMPENSATORY DAMAGES, ATTORNEY'S FEES AND COSTS, AMOUNTS DUE AND OWING UNDER THE COURT'S CONTEMPT ORDER, AND POST-JUDGMENT INTEREST**

A. **Permanent Injunctive Relief**

Plaintiff prays for entry of judgment permanently enjoining Defendant to require his specific performance of the Agreements and to prohibit him from violating the terms of the same. "The standard for issuing a preliminary or permanent injunction is essentially the same, excepting one key difference: A permanent injunction requires the moving party to show actual success on the merits, rather than the fair chance of prevailing on the merits required for a standard preliminary injunction." *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008). "If a court finds actual success on the merits, it then considers the following factors in deciding whether to grant a permanent injunction: (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest." *Id.*

The Court finds that Plaintiff has demonstrated actual success on the merits. As detailed in its April 3, 2015 Preliminary Injunction, the findings and reasoning of which are hereby adopted and incorporated by reference, the Court finds that Plaintiff has presented compelling

5

evidence sufficient to show that the Agreements between the parties are enforceable and that Defendant has breached those Agreements by providing tax preparation services within the restricted territory and soliciting Plaintiff's customers to his competing business. (ECF No. 010 at 2-6). In addition, evidence submitted by Plaintiff contemporaneously with this Motion shows that, even as of Plaintiff's filing of this Motion, Defendant has continued to meet with Plaintiff's clients and to provide competing tax services to those clients in violation of the parties' Agreements. *See* Affidavit of Teresa Mejaski ¶¶ 2-5 (hereinafter "Mejaski Aff."). Moreover, Plaintiff's well-pleaded factual allegations, which Defendant is deemed to have admitted, establish Defendant's liability to Plaintiff in this case.

The Court further finds, for the reasons expressed in its April 3, 2015 Order of Preliminary Injunction, the findings of which are hereby adopted and incorporated by reference, that Plaintiff has shown that (a) it will suffer irreparable harm in the event a permanent injunction is not entered; (b) the balance of harms favors entry of a permanent injunction; and (c) the public interest would be furthered by entry of a permanent injunction. *See* Preliminary Injunction (ECF No. 010 at 6-8). Entry of a permanent injunction is therefore warranted in this case. The Court will enter a permanent injunction enforcing the terms of the Preliminary Injunction currently in place.

### B. Compensatory Damages

In support of its request for compensatory damages, Plaintiff has submitted an Affidavit from H&R Block District General Manager Teresa Mejaski indicating that Plaintiff has suffered at least $155,176.94 in lost revenues as a result of Defendant's soliciting and serving H&R Block clients violation of the parties' Agreements. Mejaski Aff. ¶¶ 7-8. Affidavit evidence is sufficient to support an award of damages for purposes of a default judgment. *See, e.g., Iron*

*Workers St. Louis Dist. v. Arrow Fence, Inc.*, 2013 WL 991658, at *2 (E.D. Mo. 2013) ("[A] court has the discretion to determine damages based on 'detailed affidavits or documentary evidence.'") (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)); *Greater St. Louis Const. Laborers Welfare Fund v. AURA Contracting, LLC*, 2013 WL 1192583, at *2 (E.D. Mo. 2013) (same). Further, in setting the damages award, "the movant is entitled to all reasonable inferences from the evidence offered." *Int'l Painters*, 239 F. Supp. 2d at 30 (granting default judgment for, *inter alia*, damages, liquidated damages and attorney's fees and costs) (citation omitted).

Having reviewed the detailed affidavit of Ms. Mejaski, the Court finds ample evidentiary support for Plaintiff's request of $155,176.94 in compensatory damages, as that amount appears to be a conservative estimate of the damages Plaintiff has suffered as a result of Defendant's breach of the Agreements.

C. **Attorney's Fees and Costs**

Plaintiff also seeks recovery of attorney's fees, costs, and other expenditures in this action in the amount of $52,019.74. In support of this award, Plaintiff has submitted an affidavit from its counsel of record, Stacey Gilman, which states that Plaintiff has incurred attorney's fees, costs and expenses in excess of the requested amount, and that Plaintiff has not received any payment by Defendant as required by the Court's May 22, 2015 Contempt Order. Affidavit of Stacey R. Gilman ¶¶ 2, 4 (hereinafter "Gilman Aff."). Plaintiff also refers the Court to § 6.1 of the APA, in which Defendant agreed to "indemnify, defend and hold harmless [H&R Block] from and against any and all loss, liability, claim, cost, damage and expense whatsoever (including, without limitation, any investigation, legal and other fees and expenses incurred in connection with, . . . and including any costs incurred in successfully asserting the right to

7

indemnification hereunder) (collectively, the **"Damages"**) incurred . . .by reason of or resulting from or based upon: (1) the inaccuracy of any representation or warranty, or the breach or default of or under any covenant or agreement, made by [Ascher] in this Agreement, including any of the schedules or exhibits hereto [*i.e.,* such as the Noncompetition Agreement, which was Schedule 7.1(B)] ...." APA § 6.1(A)(1) (bolded text original).

It is well established that "when a contract specifically provides that a party must pay all costs and expenses related to litigation and other legal proceedings, attorney's fees are recoverable." *Champion Sports Ctr., Inc. v. Peters*, 763 S.W.2d 367, 371 (Mo. App. 1989) (pursuant to substantially similar indemnification/hold harmless provision, affirming, among other relief, award of costs and attorney's fees incurred in connection with action to enforce noncompetition covenant included in agreement for the sale of defendant's business). Accordingly, the Court finds that the award for attorney's fees, costs, and expenses requested by Plaintiff is recoverable under the APA between the parties. The Court further finds that the amount requested is amply supported by the Affidavit of Ms. Gilman and is a reasonable award of fees for the work done in this case. Plaintiff is entitled to $52,019.74 in attorney's fees, costs, and expenses from Defendant.

### D. Amounts Due And Owing Under the May 22, 2015 Contempt Order

In its May 22, 2015 Contempt Order, the Court directed Defendant to pay Plaintiff "$1,000 per day for any and all continued violation of the Court's Preliminary Injunction up until the date of the filing of the notarized affidavit." (ECF No. 023 ¶ 4). That affidavit was due on June 1, 2015, but has not yet been filed. Further, having reviewed the Affidavit submitted by Ms. Gilman, the Court finds that Plaintiff has not paid any part of the amounts due and owing to

Plaintiff under the Contempt Order. *See* Gilman Aff. ¶ 2. Accordingly, that payment remains outstanding and overdue to Plaintiff.

As of the date of this Order, 92 days have passed since the Court's May 22, 2015 Contempt Order. Thus, the Court finds that Defendant owes Plaintiff $92,000.00 under the Contempt Order. The Court orders this amount reduced to a final judgment against Defendant.

### E.     Post-Judgment Interest

Plaintiff finally requests post-judgment interest on all amounts awarded in damages. Under 28 U.S.C. § 1961, interest is allowed "on any money judgment in a civil case recovered in district court . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." This statute applies to actions, like this one, based on diversity of citizenship. *Mobil Exploration & Producing N. Am., Inc. v. Graham Royalty Ltd.*, 910 F.2d 504, 509 (8th Cir. 1990). Accordingly, the Court orders Defendant to pay Plaintiff post-judgment interest accruing from the date of judgment until all damages are paid in full, at the rate specified in 28 U.S.C. § 1961.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Walter A. Ascher, his officers, agents, servants, employees, attorneys and any other person or entity in active concert or participation with Defendant or his officers, agents, servants, employees and attorneys are **PERMANENTLY RESTRAINED** from directly or indirectly doing any of the following:

1.     From violating the terms of the parties' Asset Purchase Agreement and the Noncompetition and Nonsolicitation Agreement;

2. From engaging in the business of bookkeeping services, preparing income tax returns or offering electronic filing services, refund anticipation loans, related services or any other Competitive Business,[1] including without limitation tax problem solving services and oversight and supervision of tax return preparation by others, within a 50-mile radius of 225 East Irving Park Rd., Roselle, Illinois 60172 (i.e., within the "Noncompetition Territory"[2]);

3. From owning, managing, operating, controlling, participating in or being connected with or being interested in as an investor, creditor, manager, employee, volunteer, advisor, partner, shareholder, proprietor, or otherwise, or providing services, advice, or other assistance to, any person or entity engaged in the Competitive Business activities enjoined by this Order within the Noncompetition Territory;

4. Without limitation to the foregoing, from allowing, leasing to or receiving rents from, the operation of a tax business at 225 East Irving Park Rd., Roselle, Illinois, 60172;

5. From concluding any sale to or any transaction with any of the Nonsolicitation Clients of any Competitive Business;

6. From soliciting, servicing, diverting or preparing any tax returns for any of the Clients[3] regardless of whether such Clients reside or are located within or outside of the Noncompetition Territory;

---

[1] "Competitive Business" is defined as: engaging in the business of bookkeeping services, preparing income tax returns or offering electronic filing services, refund anticipation loans, related services, or any other services competitive with any services provided by H&R Block or its Affiliates. A person or entity is an "Affiliate" of another person or entity if such person or entity, directly or indirectly, controls, is controlled by, or is under common control with such other person or entity.

[2] "Noncompetition Territory" is defined as anywhere within the 50-mile radius of the Business located at 225 East Irving Park Rd., Roselle, Illinois 60172. The "Business" means Defendant's tax preparation, bookkeeping, electronic filing and related services business that is the subject of the APA.

[3] "Clients" means all persons and entities who were clients of Defendant at any time during the two-year period prior to December 5, 2012, and any Affiliates of such customers or Clients. "Nonsolicitation Clients" means any individuals or entities who were, at any time during the two-year period prior to December 5, 2012, clients of Defendant or the Business, and any Affiliates of any such customers or Clients.

7. From calling upon any of the Nonsolicitation Clients for the purpose of soliciting or providing any Competitive Business;

8. From diverting H&R Block's former, existing and prospective clients and Clients away to any business of Defendant;

9. From using any of the Purchased Assets sold to H&R Block under the APA or any other assets owned by H&R Block, whether tangible or intangible, including without limitation, Client/client lists, Client/client information and records, and other Client/client-related assets, telephone numbers (including 630-307-1106) and email addresses (walterascher@yahoo.com) purchased by H&R Block under the APA;

10. From using any information obtained from H&R Block, and any trade secrets, confidential information, assets and Purchased Assets of H&R Block that Defendant possesses. Defendant is further ordered to return all such assets and information to H&R Block immediately upon notice of this Order;

11. From using the name Ascher Consulting, LLC and any confusingly similar trade name. Without limitation to the foregoing, Defendant shall not use the name "Ascher LLC" or any confusingly similar name in conjunction with offering tax-preparation services on or in any signage, marketing, client communications, advertising, social media or other business-related materials, including as illustrated in Exhibit 3 of the Verified Complaint and the Mejaski Aff. and reproduced below:

11





12. From influencing or attempting to influence any of the Clients or clients of H&R Block or its Affiliates to stop doing business with H&R Block or its Affiliates, or otherwise adversely affecting the relationship of H&R Block or its Affiliates with their Clients or clients;

13. From soliciting and/or employing any person who was an employee of H&R Block in violation of the Noncompetition Agreement for the period agreed to and within the limitations as provided by that Agreement, including, but not limited to, Rosann Kozerka, Karen Kozerka, Amber Hooker or Rose Carr;

14. From interfering with the "Key Employee Employment Agreements" attached to the APA as Schedule 7.1(d) thereto;

15. From making false, disparaging and/or defamatory comments about H&R Block; and

16. From otherwise disputing, damaging, impairing or interfering with the business of H&R Block or its Affiliates.

**IT IS FURTHER ORDERED** that Defendant shall pay Plaintiff $155,176.94 in lost revenues as a result of Defendant's soliciting and serving H&R Block clients violation of the parties' Agreements.

**IT IS FURTHER ORDERED** that Defendant shall pay Plaintiff $52,019.74 in attorney's fees, costs, and expenditures related to this action.

**IT IS FURTHER ORDERED** that the amounts due and owing under this Court's May 22, 2015 Contempt Order (ECF No. 023) is reduced to final judgment. Defendant shall pay Plaintiff $92,000.00 for amounts due and owing under the Contempt Order.

**IT IS FURTHER ORDERED** that Defendant shall pay Plaintiff post-judgment interest accruing from the date of this Order until all damages are paid in full "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment," in accordance with 28 U.S.C. § 1961.

**IT IS SO ORDERED.**

/s/ S.R.B.
_____
JUDGE STEPHEN R. BOUGH
UNITED STATES DISTRICT COURT

DATE: August 20, 2015